DECISION AND ORDER
PER CURIAM.
This case is an election law appeal brought by Ken Harrington, former Chairman of the Little Traverse Bay Bands of Odawa Indians, against the Election Board of the Little Traverse Bay Bands of Odawa Indians (Election Board). Mr. Harrington challenges the legality of a recall election held on August 8, 2011, the results of which were certified by the Election Board on August 22, 2011. The principal contention of Mr. Harrington’s challenge is that the timing of the recall election violated the requirement, found both within the Tribal Constitution and the Elections Statute, that “|e]ach elected official may be subject to no more than one (1) recall election per calendar year.” The Election Board contends that the recall election’s timing did not violate this timing requirement. The Election Board also contends that Mr. Harrington’s challenge was untimely and therefore deprived the Tribal Court of jurisdiction. After reviewing the record and decision of the Tribal Court, the appellate briefs submitted by the parties, and the oral argument of the parties, the Appellate Court concludes that Mr. Harrington’s recall election challenge was in fact untimely. The Appellate Court also finds that, even if it were timely, the timing of the recall election in 2011 did not violate LTBB constitutional or statutory *125 law. The Appellate Court therefore affirms the decision of the Tribal Court.
Factual Background
The decision of the Tribal Court stated that the parties had agreed to the facts of the case, although, with one minor exception addressed below, it did not identify those facts in the body of its decision. The Appellate Court notes that Rule XXII of the LTBB Rules of Civil Procedure requires that all Tribal Court opinions must include findings of fact before discussing conclusions of law and issuing the final order and judgment. In the absence of such findings, the Appellate Court draws upon the record to ascertain the facts that were stipulated to by the parties.
The minor exception referred to above is the Tribal Court’s statement in its footnote 1 that “the Plaintiff stated that he was subject to a recall election on May 18, 2010, and was not recalled, and again on August 8, 2011, at which time he was recalled.” The Appellate Court finds that the date identified by the Tribal Court for the first recall election is clearly erroneous, since both Mr. Harrington’s Protest of Recall Election Results and Verified Complaint for Preliminary and Permanent Injunction and the Election Board’s Response indicate that the parties agree that the first recall election took place on May 28, 2010. Therefore, in accordance with LTBB Appellate Procedures Rule 7.501(A), the Appellate Court sets aside the Tribal Court’s factual finding as to the date of the first recall election.
Based on our review of the record, it appears that the parties agreed upon the following facts:
On May 28, 2010, the Election Board conducted a recall election to remove or retain then-Tribal Chairman Mr. Harrington. As a result of that recall election, Mr. Harrington was retained. Then, on February 8, 2011, the Election Board issued new recall petitions for the office of Tribal Chairman upon the request of registered voters. The petitions were submitted to the Election Board with signatures, and on May 15, 2011, the Election Board verified that the required signatures had been obtained and certified the recall petition for Chairman Harrington.
On August 8, 2011, the Election Board held a recall election to remove or retain Mr. Harrington from office. On August 22 at 5:30 pm, the Election Board certified the results of the recall election, verifying that 402 votes were cast to remove Mr. Harrington and 326 votes were cast to retain him. That same day, on August 22 at about 4:00 pm, Mr. Harrington filed a Protest of Recall Election Results and Verified Complaint for Preliminary and Permanent Injunction (Protest of Election Results and Request for an Injunction). On August 23, 2011, the former Vice Chairman Dexter McNamara took the oath of office of Tribal Chairman before the Tribal Council and immediately assumed office.
Procedural Background
Tribal Court review of this case began when Mr. Harrington filed his Protest of Election Results and Request for an Injunction on August 22, 2011. On that same day, Mr. Harrington also filed a Verified Ex Parte Emergency Motion to Stay Certification of Recall Election Results (Motion to Stay). The Tribal Court held a hearing in the matter on September 6, 2011, and on September 9, 2011, both parties filed briefs with the Tribal Court. On that same day, September 9, 2011, the Tribal Court issued an Order Following Election Challenge Hearing (Decision). In its Decision, the Tribal Court denied Mr. Harrington’s Motion to Stay in accordance with Rule XI, section (f) of the LTBB *126 Rules of Civil Procedure (“Injunctions”). On the merits of the arguments presented in support of Mr. Harrington’s claim, the Tribal Court found that “[Mr. Harrington’s] constitutional rights have not been violated, because he was not subjected to a recall election more than once in a calendar year.” The Tribal Court found that this is true, “regardless of how calendar year is defined.” In addition, the Tribal Court held that Mr. Harrington’s election challenge was untimely, since it concluded that it was not filed “within ten days as required by the [LTBB] Constitution.” The Tribal Court concluded that it therefore did not have subject matter jurisdiction in the case. Upon issuing these conclusions of law, the Tribal Court ordered dismissal of the case.
On October 4, 2011, Mr. Harrington filed a timely Notice of Appeal with the Appellate Court. In the Notice of Appeal, Mr. Harrington appeals the Tribal Court’s conclusions of law. His appeal contests the Tribal Court’s ruling that he had not been subjected to more than one recall election within a calendar year in violation of the law, and his appeal contests the Tribal Court’s ruling that his challenge was untimely. The Appellate Court held a scheduling conference on October 27, 2011, and issued an order requiring briefs from the parties and scheduling oral argument for December 9, 2011. Due to an unanticipated change in circumstances, the Appellate Court rescheduled oral argument for January 13, 2011. On that date, the Appellate Court received oral arguments from the parties.
ANALYSIS
A. Standard of Review
The Appellate Court reviews the Tribal Court Order in accordance with the standard of review required by Rule 7.501 of the Rules of Appellate Procedures. Legal conclusions are reviewed de novo and factual findings are reviewed for clear error. In this case, where the facts have been agreed to by the parties, the Appellate Court will focus on a de novo review of the Tribal Court’s legal conclusions.
B. Arguments of the Parties
The parties briefed three legal issues for the Appellate Court. A fourth legal issue was also raised by Mr. Harrington, but the Appellate Court declines to review it because it is the subject of a separate case that was filed in the Tribal Court. That fourth issue is whether the certification of the recall election results was improper due to the alleged fact that a valid challenge of the results was pending. The remaining three issues are summarized as follows:
1) Whether Mr. Harrington filed his Protest of Election Results in an untimely manner;
2) Whether the term “calendar year” in the LTBB Constitution refers to a period from January 1 to December 31, or whether it refers to a period of time starting on any date and extending for 365 days; and
3) Whether Mr. Harrington was unlawfully subjected to more than one recall election in a calendar year.
1. Untimeliness
We begin with the first issue relating to whether Mr. Harrington’s Protest of Election Results was filed in an untimely manner. The relevant source of law for this issue is Article XII (F) of the LTBB Constitution. That section states that “[a]ny registered voter of the Little Traverse Bay Bands of Odawa Indians may challenge for cause the results of any election by filing a written challenge with the Tribal Court within (10) ten days after the *127 election.” LTBB Constitution, Article XII(F). The Elections Statute, enacted on December 20, 2010, has a similar but not identical provision. See, Waganakising Odawak Statute 2010-019, Tribal Elections and Election Board. Section IX(D) of the Elections Statute states that, “[a]ny registered Tribal voter may protest the results of an election by filing a written protest with the Tribal Court within ten (10) calendar days after the preliminary results are posted.” Section IX(D), Waganakising Odawak Statute 2010-019, Tribal Elections and Election Board (emphasis added). Thus, whereas the LTBB Constitution simply imposes a “ten day” limitation on filing election protests, the Elections Statute imposes a “ten calendar day” limitation. Also, whereas the LTBB Constitution sets a deadline in relation to ten days “after the election,” the Elections Statute sets the same deadline in relation to ten calendar days “after the preliminary results are posted.”
The Appellate Court concludes that there is no meaningful difference between “ten days” and “ten calendar days,” and both refer to ten consecutive days, without regard for weekends, holidays or days when tribal administrative offices are open or closed. A “calendar day” is not specially defined by the Elections Statute, unlike a “Business Day,” which is explicitly defined in the elections Statute as “[a]ny day of the week that the Tribal Administrative Offices are open.” Section IV(A), Waga-nakising Odawak Statute 2010-019, Tribal Elections and Election Board.
The Appellate Court notes, however, that the LTBB Constitution and the Elections Statute do differ in a material respect with respect to how they identify the starting point for counting the ten days, in general, when there is a conflict between a provision in the LTBB Constitution and a statute enacted by the Tribe, the constitutional provision prevails. This is because the Supremacy Clause in the LTBB Constitution requires that we resolve conflicts between constitutional law and statutory law in favor of the LTBB Constitution. Article VI(E), LTBB Constitution. Thus, we find that the time frame for filing an election protest is “within ten (10) days after the election ” in accordance with Article XII, without regard for weekends, holidays or days when tribal administrative offices are open or closed.
In this case, the recall election was held on August 8, 2011 and Mr. Harrington filed his protest of the election results fourteen days later, on August 22, 2011. Because the protest was filed fourteen days after the recall election was held, Mr. Harrington’s protest does not comport with the ten day deadline imposed by Section XII(F) of the LTBB Constitution and is therefore untimely.
Mr. Harrington argues that his untimeliness should be excused because he relied to his detriment on a statement made by the Chairperson of the Election Board. He claims that the Election Board Chairperson told him that he had ten business days to file a protest of the recall election results, rather than ten days. If ten business days were in fact the rule, then Mr. Harrington’s protest, filed on August 22, 2011, would be deemed timely.'
If the Appellate Court were to conclude that Mr. Harrington’s reliance was reasonable and that he should have ten business days before filing his recall election protest, then we would create a precedent that the misstatements of government officers can effectively change the law. Such a conclusion would be extremely dangerous, because it would allow the parameters and substance of constitutional rights and duties to be altered by the negligent, inaccurate comments of a single government agent. For this reason, we conclude that *128 if the Election Board Chairperson did indeed provide an incorrect description of the law, it cannot be relied upon by Mr. Harrington as the basis for an expanded constitutional right to file a recall election protest at a later date than the deadline actually imposed by the Constitution.
The Appellate Court notes that this result can seem harsh, particularly where an individual has reasonably relied on the statements of a government official to their detriment. In Mr. Harrington’s case, his reliance does not appear to be reasonable. The LTBB Constitution clearly described the time that Mr. Harrington had available to file his protest. Unfamiliarity with the law is not an excuse for missing the filing deadline, particularly where the law is clearly outlined in the LTBB Constitution. The Appellate Court also notes that during this period, Mr. Harrington was represented by a licensed attorney. Considering his use of legal counsel, Mr. Harrington’s argument that he reasonably relied upon the words of the Election Board Chairperson is unconvincing. In the future, if an individual detrimentally relies upon the incorrect statements of a government officer, the Tribal Court will need to look at the complete context and determine whether the reliance was reasonable. Even if reasonable, the Tribal Court will need to determine the appropriate remedy, which may or may not include giving effect to the statement made by the government officer.
The Appellate Court also notes that Mr. Harrington never argued that he relied upon the Elections Statute rather than the LTBB Constitution. Such an argument may have bolstered his claim that he reasonably believed that he had more time to file his protest, because the statute requires that election protests be filed within ten calendar days of the posting of the preliminary results. In this case, the record does not conclusively indicate when the preliminary results were posted. The Election Board’s certification of election results is included in the record and includes the date of August 8, 2011. The reference to August 8, 2011 might simply refer to the date of the recall election, or it might refer to the date that the preliminary results were posted. If the preliminary results were actually posted on August 8, then the deadline for filing an election protest under the statute would be August 18. But if the preliminary results were not posted until the election was certified on August 22, Mr. Harrington might have had a stronger argument that he reasonably believed that he had ten days from August 22, or until September 1, 2011 to file a protest.
In conclusion, the Appellate Court finds that Mr. Harrington submitted an untimely protest of the election results, in violation of Section XII(F) of the LTBB Constitution. Furthermore, Mr. Harrington did not reasonably rely upon the alleged misstatement of the Election Board Chairperson, given the clear description of the deadline in the LTBB Constitution and given his use of a licensed attorney.
2. The meaning of “calendar year”
The next issue that we address is the meaning of “calendar year.” The LTBB Constitution states that “[e]ach elected official may be subject to no more than one (1) recall election per calendar year.” Article XIII(A)(2) of the LTBB Constitution (emphasis added). The Elections Statute has an identical provision. Section YII(E)(2) of Waganakising Oda-wak Statute 2010-019, Tribal Elections and Election Board. Neither the LTBB Constitution nor the Elections Statute defines the term “calendar year.”
The Election Board argues that the term “calendar year” should mean the *129 Gregorian calendar, which begins on January 1 and ends on December 31. Mr. Harrington argues that the term “calendar year” means a period beginning on any date and extending for 365 days. He argues that this definition is consistent with Odawa custom and with the public policy of the tribe. According to Mr. Harrington, the drafters of the Constitution did not intend to force a rigid adherence to the Gregorian calendar when they used the term “calendar year” in the Constitution. Instead, Mr. Harrington argues that “calendar year” simply includes a period of twelve moons. The Appellate Court finds that this argument is persuasive. In Oda-wa and Anishinaabe custom, time is understood as a continuous cycle. There is no single starting and ending point that marks the beginning and end of a year. Therefore, when the LTBB Constitution states that an event can happen only once in a calendar year, we believe that the intent of the drafters of the Constitution was to ensure that the event did not reoccur for another 365 days from the date of the event itself. This conclusion is also consistent with the Preamble to the LTBB Constitution, which states that the laws set forth within the Constitution are set forth “in the ways of our ancestors” and “in accordance with our Anishinaabe Heritage.” Preamble to the LTBB Constitution.
The definition of “calendar year” that we adopt is also consistent with the tribe’s public policy. The LTBB Constitution demonstrates a commitment to balancing the right of the membership to recall elected officials with the need of the government to effectively function. This is evidenced by Article XIII(A)(l)(e), which states that, “[t]o provide for continuity of governance no more than four (4) Tribal Council members shall be subject to a recall election at any one time.” Similarly, the requirement that no elected official may be subject to more than one recall election per calendar year ensures continuity of governance for the tribe. If individuals could be subject to back-to-back recall elections within a few months’ time, as would be possible under the Gregorian calendar year definition, then the elected official would be incapable of fulfilling the duties of office because their time would be filled with responding to recall election efforts.
3. Whether Mr. Harrington was unlawfully subjected to more than one recall election in a calendar year
The Appellate Court next reviews whether Mr. Harrington was unlawfully subjected to more than one recall election in a calendar year. The source of the relevant law is Section XIII(A)(2) of the LTBB Constitution, which states that “[ejach elected official may be subject to no more than one (1) recall election per calendar year.” The Elections Statute includes an identical provision. Section VII(E)(2) of the Waganakising Odawak Statute 2010-019, Tribal Elections and Election Board.
The Election Board argues that Mr. Harrington was not subjected to more than one recall election per calendar year. It claims that Mr. Harrington’s first recall election occurred on May 28, 2010, and his second occurred on August 8, 2011. Mr. Harrington argues that a recall election is a process that includes the signing of the initial petition all the way through to the verification of the election results.
The Appellate Court concludes that although a recall effort is indeed a process that includes multiple steps, a “recall election” is itself a more specific event within that process. This interpretation is supported by the language of the LTBB Con *130 stitution, which refers to a “recall election” in a very specific way. In the “Recall” section of the LTBB Constitution, the steps for a recall effort are described in subparagraphs (a)-(d) of Article XIII(A)(1). In these subparagraphs, there is only one use of the term “recall election,” and that is where the Constitution states that “[a] recall election shall be scheduled by the Election Board within ninety (90) days upon verification of the petition and its signatures.” Article XIII(A)(l)(c) of the LTBB Constitution. In other words, a “recall election” is the date when ballots are officially collected.
In this case, ballots were officially collected on May 28, 2010 and again on August 8, 2011. These dates are therefore the dates when the recall elections took place. Since these dates are more than a calendar year apart, they do not violate Section XIII(A)(2)’s prohibition of subjecting an elected official to more than one recall election per year.
CONCLUSION
In conclusion, the Appellate Court affirms those portions of the opinion of the Tribal Court that concluded (a) that Mr. Harrington’s recall election protest was untimely and (b) that Mr. Harrington was not unlawfully subjected to more than one recall election in a single calendar year. Our conclusion that a “calendar year” refers to 365 days from the date of one event to the next does not change the outcome of the ease.
DECIDED AND APPROVED BY A UNANIMOUS APPELLATE COURT.